UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

  Terry Guerrero                                              N/A    
Deputy Clerk                                                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                        Not Present

**PROCEEDINGS:**     **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR STAY (Doc. 12)**

      Before the Court is Defendant Procter & Gamble Co.'s Motion to Dismiss or Stay. (Mot., Doc. 12.)  Plaintiff Veronica Brenner filed an Opposition (Opp'n, Doc. 23), and Defendant submitted a Reply (Reply, Doc. 26).  For the reasons given below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

## I.   BACKGROUND

      Plaintiff seeks to represent a nationwide class and a California subclass of those who purchased Pampers "Natural Clean" Baby Wipes.[1]  (Compl. ¶ 3.)  The individual packaging, as included below, is a greenish hue and includes stylized depictions of flowering plants, animals, and leaves:

---

[1] When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint.  *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 5 (2010).  The Court may also consider facts subject to judicial notice on a motion to dismiss.  *Mullis v. United States Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.



(*Id.*)  Procter & Gamble seeks judicial notice of this packaging that the Natural Clean
wipes would have been purchased in:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

(White Decl. ¶ 2.)[2]

Plaintiff alleges that this packaging is "false and misleading" because the Natural Clean wipes contain "an unnatural and potentially harmful ingredient called phenoxyethanol." (Compl. ¶ 4.) Plaintiff's Complaint directs the Court to a Food and Drug Administration press release warning mothers not to use a particular nipple cream because it contains phenoxyethanol as well as another potentially harmful compound. (*Id.*) The press release describes phenoxyethanol as "a preservative that is primarily used in cosmetics and medications" that "can depress the central nervous system and may cause vomiting and diarrhea, which can lead to dehydration in infants." Press Release, Food and Drug Administration, http://www.fda.gov/newsevents/newsroom/pressannouncements/ucm116900.htm. Plaintiff also asserts that a May 2012 report from the French Agence Nationale de Sécurité du Médicament et des Produits de Santé cautions consumers not to use wipes containing phenoxyethanol on infants under the age of three because of concerns about the compound's "reproductive and developmental toxicity." (Compl. ¶ 5.)

The Federal Trade Commission (FTC) has taken at least two enforcement actions within the past year against cosmetic manufacturers of "natural"-labeled products because they contained phenoxyethanol. (Compl. ¶ 6.) The FTC's press release about the enforcement actions describes phenoxyethanol as an "artificial ingredient[]." *Four*

---

[2] Defendant's unopposed motion for judicial notice of the "Natural Clean" exterior packaging is GRANTED. While Plaintiff's complaint focuses on the individual packaging, Plaintiff does not contest the authenticity of Defendant's picture of the exterior packaging and it partially underlies Plaintiff's claims. *See Wright v. Gen. Mills, Inc.*, No. CIV.08-CV-1532L (NLS), 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009) ("Because neither party contests the authenticity of the documents and they serve as the basis for plaintiff's allegations found in the FAC, the Court takes judicial notice of the materials presented by the parties."). Plaintiff and Defendant's unopposed requests for judicial notice of various court and FDA documents are likewise GRANTED. *See, e.g., Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG POR, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) (judicial notice of page on government website); *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357, at *3 (N.D. Cal. Mar. 2, 2016) (judicial notice of court documents).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

*Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint*, FTC, https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care.

Plaintiff has purchased Pampers Natural Clean Wipes "on many occasions since May 2015" at a Target located in Rancho Santa Margarita, California for approximately $5.99.  (Compl. ¶ 13.)  Plaintiff claims that she understood the Natural Clean label "to mean that the Wipes did not contain synthetic chemicals and, at the very least, would not contain chemicals [that] were potentially harmful to her child."  (*Id.*)  The Complaint alleges claims for (1) Unfair and Deceptive Acts and Practices under the California Consumers Legal Remedies Act, (2) Violations of California's False Advertising Law, (3) Violations of California's Unfair Competition Law, (4) Unjust Enrichment, and (5) Breach of Express Warranty (Uniform Commercial Code § 2-213).  (*Id.* ¶¶ 26-63.)

## II.   LEGAL STANDARD

### A.  Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).  When considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "The party asserting [] subject matter jurisdiction bears the burden of proving its existence."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                        Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

### B. **Rule 12(b)(6)**

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. **DISCUSSION**

Defendant moves to dismiss Plaintiff's case for lack of Article III standing as well as failure to state a claim. (Mem. at 6-20.) Defendant also requests a stay under the primary jurisdiction doctrine or, alternatively, until the resolution of appeals in both *Brazil v. Dole Packaged Foods* and *Kosta v. Del Monte Foods*. (Mem. at 20-25.) The Court will address each argument in turn.

### A. **Article III Standing**

#### 1. **Injury-in-Fact**

Defendant argues that Plaintiff has not suffered an Article III injury-in-fact because Plaintiff could not have believed that Pampers Natural Clean Wipes were free of synthetic chemicals, including one Plaintiff asserts could be potentially harmful to her child. (Mem. at 6-10; Compl. ¶ 13.)

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

For a party to have Article III standing, she must (1) have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the harm must be "fairly trace[able]" to the defendants' conduct, and (3) the Court must be able to redress the claimed injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). At each stage of a suit, the elements of Article III standing must "be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.*; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

Defendant seems to muddle *statutory* standing under the CLRA, UCL, and FAL, which is not a question of subject matter jurisdiction, with Article III standing. The difference is not mere semantics: Constitutional standing is properly scrutinized under Rule 12(b)(1) but statutory standing should be analyzed under Rule 12(b)(6). *See Maya*, 658 F.3d at 1067. Further, "[t]he jurisdictional question of [Article III] standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Properties, Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). Which is to say, a claim may ultimately lack merit but that, by itself, does not mean that a plaintiff lacks Article III standing to bring it.

Plaintiff claims that she suffered an economic loss (*i.e.*, the multiple purchases of Pampers Natural Clean Wipes) because she thought she was purchasing a product free of "synthetic chemicals" or at least one that would "not contain chemicals [that] were potentially harmful to her child." (Compl. ¶ 13.) Such "palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1037 (N.D. Cal. 2014). Nevertheless, Defendant asserts that Plaintiff could not have suffered her purported economic injury because her prior suit against Kimberly-Clark for its Huggies "natural & pure" baby diapers and "Natural Care" wipes must have made her aware that

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

"natural"-branded baby wipes are not free of synthetic chemicals, including phenoxyethanol.[3]  (Mem. at 6-10.)

At this stage of the proceedings, the Court cannot conclude that Plaintiff's claim of reliance is so baseless that this Court does not have subject matter jurisdiction. Defendant's argument implies that any reasonable consumer who was allegedly misled by a "natural" label would, without question, research every ingredient found in any similar "natural"-branded products to check for synthetic or potentially harmful chemicals before making a purchase.  The Court cannot adopt such a sweeping proposition as a matter of law.

Here, Plaintiff asserts in her Complaint and in an attached declaration made under penalty of perjury that she relied on Pampers' "Natural Clean" label.  (Compl. ¶ 13; Brenner Decl. ¶ 3.)  As the Supreme Court has instructed, at the pleading stage, "general factual allegations of injury" may be sufficient to demonstrate standing.  *Lujan*, 504 U.S. at 561.  Plaintiff's averred reliance is buttressed by her allegation—which the Court must accept as true on a motion to dismiss—that she has purchased the Natural Clean Wipes on multiple occasions.  (Compl. ¶ 13.)  And, although Plaintiff did bring suit against Kimberly-Clark for its Natural Care baby wipes, that suit concerned sodium methylparaben and methylisothiazolinone, while Plaintiff alleges here that Pampers Natural Clean Wipes include phenoxyethanol.  (Kimberly-Clark Compl. ¶ 4, Exh. 2, Doc. 13; Compl. ¶ 4.)  She characterizes her transition from Huggies to Pampers Natural Clean Wipes as a reasonable response after "learning that the Huggies brand failed to meet her expectations."  (Opp'n at 3-4.)  While Defendant remains free to question Plaintiff's assertion of reliance at class certification, summary judgment, or trial, the Court believes that Plaintiff's allegations and declaration under oath are sufficient at this juncture to

---

[3] Before filing her own suit against Kimberly-Clark for its "natural & pure" baby diapers and "Natural Care" wipes, Plaintiff sought leave to intervene in an existing putative class action, but her motion was denied.  (*See* Proposed Class Action Complaint in Intervention, Exh.1, Doc. 13.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

establish subject matter jurisdiction.[4]  Thus, Defendant's Motion to Dismiss Plaintiff's
claims for lack of Article III standing is DENIED.

## 2.  Injunctive Relief

Defendant also moves to dismiss Plaintiff's request for injunctive relief because
Plaintiff faces no likelihood of future injury.  (Mem. at 10-11.)  Plaintiff, citing
*Henderson v. Gruma Corp.*, No. CV 10–04173 AHM (AJWx), 2011 WL 1362188 (C.D.
Cal. April 11, 2011), protests that adopting Defendant's position "would 'allow an
alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same
person twice.'"  (Opp'n at 16 (quoting *Henderson*, 2011 WL 1362188, at *7).)

A plaintiff must demonstrate a "real and immediate threat of repeated injury" to
have Article III standing to seek an injunction.  *Delarosa v. Boiron, Inc.*, No. SACV 10-
1569-JST CWX, 2012 WL 8716658, at *2 (C.D. Cal. Dec. 28, 2012) (Staton, J.) (quoting
*Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc)).  To the
extent that *Henderson* crafted a public policy exception to this Article III requirement for
false advertising cases, the Court once again respectfully declines to follow its reasoning.
*See Delarosa*, 2012 WL 8716658, at *5.  California's public policy against false
advertising and the twin aims of the *Erie* doctrine must yield when in conflict with the
constitutional restraints imposed by Article III.  *Id.* at *3.  But, in some circumstances, a
plaintiff alleging false advertising claims may properly seek an injunction—most notably,
if the plaintiff credibly claims she would purchase the product again if properly labeled.
*See id.* at *5.

Nothing in Plaintiff's Complaint suggests that she would purchase the wipes again
if they were properly labeled.  Accordingly, the Court GRANTS Defendant's Motion to
Dismiss Plaintiff's request for injunctive relief WITH LEAVE TO AMEND.  If Plaintiff,
consistent with her Rule 11 obligations, would like to amend her complaint to allege that
she would purchase the product again if appropriately labeled, she may do so.

---

[4] For the same reasons, Plaintiff has plausibly asserted reliance under Rule 12(b)(6) for
purposes of *statutory* standing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

B. **Failure to State a Claim**

Defendant seeks to dismiss Plaintiff's case for failure to state a claim, arguing that a reasonable consumer would not be misled by Pampers' "Natural Clean" label. (Mem. at 11-16.)  Separately, Defendant moves to dismiss Plaintiff's express warranty and unjust enrichment claims. (Mem. at 18-20.)

**1. Plausibility of Consumer Confusion**

Under the UCL, FAL, and CLRA, courts apply the "reasonable consumer" test, which requires a plaintiff to show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation marks omitted).  Violations of these statutes, therefore, do not require a showing of fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  But if a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," then the claim "sounds in fraud" and is subject to the Rule 9(b) pleading standard. *Id.*  If a claim only partially sounds in fraud, the Court should disregard the allegations of fraud and consider whether the plaintiff states a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Even if a complaint does not explicitly reference "fraud," an allegation sounds in fraud if it "alleg[es] facts that necessarily constitute fraud." *Id.*

The Court is not convinced that Plaintiff's Complaint wholly sounds in fraud. Only one theory, totaling two paragraphs, underlying Plaintiff's UCL claim is clearly premised on allegedly fraudulent conduct. (*See* Compl. ¶¶ 43-44.)  Plaintiff's general allegation that Defendant knew about the FDA and French government findings does not "necessarily" imply that Defendant made its "natural" claim with the *intent to defraud*, a necessary element of fraud under California law. *See Kearns*, 567 F.3d at 1126 (comparing the plaintiff's allegations to the elements of fraud under California law).  This general allegation is equally consistent with an inference that Defendant disagreed with these governmental findings or found them irrelevant to its product.  Thus, the Court will

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

disregard the allegations of fraud and consider whether Plaintiff's claims are plausible.[5]
*See Vess*, 317 F.3d at 1105; *Williams*, 552 F.3d at 938.

California courts have defined the proverbial "reasonable consumer" as "the ordinary consumer acting reasonably under the circumstances" and not one who is "versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2006), *as modified on denial of reh'g* (Jan. 31, 2006); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010). Under the reasonable consumer test, not only is patently false marketing actionable, "but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (citation omitted). The Ninth Circuit has instructed that the reasonable consumer standard is usually a factual inquiry rarely suitable for resolution as a matter of law based on the pleadings. *See id.* at 938-39.

Here, the FTC, at least in certain contexts, views phenoxyethanol to be "artificial" and thus not "natural." *See Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint*, FTC, https:// https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care. While this is not dispositive evidence of what reasonable consumers would believe, it raises a plausible inference that a significant portion of consumers could believe that Defendant's "Natural Clean" claim was false or misleading. The Pampers Natural Clean

---

[5] Even if Plaintiff's CLRA, UCL, and FAL claims are analyzed under the heightened Rule 9(b) pleading standard, Plaintiff sufficiently alleges "'the who, what, when, where, and how' of the misconduct charged," *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), and "set[s] forth an explanation as to why [a] statement or omission complained of was false or misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds). Plaintiff alleges she purchased Pampers' Natural Clean Wipes multiple times beginning in May 2015 from a particular Target in Rancho Santa Margarita and includes a picture of the individual packaging. *See Vess*, 317 F.3d at 1106. Further, Plaintiff points to the FDA, French government, and FTC findings to provide a basis for why she believes the Natural Clean label is false or misleading. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                                  Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

product packaging—which includes the phrase "Natural Clean" in large, greenish text against a green background and individual green packages labeled "Natural Clean" with depictions of flowering plants—reinforces the inference that a consumer could be misled.

Even if a reasonable consumer would not believe that a "Natural Clean" baby wipe contained no synthetic ingredients, it is plausible that a reasonable consumer would believe such a product did not contain any potentially harmful chemicals.  Plaintiff's references to advisories by the FDA and Agence Nationale de Sécurité du Médicament et des Produits de Santé cautioning—at least in certain circumstances—against using products containing phenoxyethanol on infants support her assertion that phenoxyethanol is "potentially harmful."  (Compl. ¶ 4.)

The bulleted text below the "Natural Clean" label on the wipes' exterior packaging does not render Plaintiff's assertion of consumer deception implausible.  This text, which is in a much smaller font than the "Natural Clean" label, merely states in three languages "unscented with a touch of aloe."  In *Jou v. Kimberly-Clark Corp.*, the court concluded that it was plausible that the "pure & natural" label on Huggies diapers was misleading, even though the label appeared next to a list of features of the diaper (specifically, "Soft Organic Cotton," "Hypoallergenic," and "Aloe & Vitamin E").  No. C-13-03075 JSC, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013); (*Jou* Compl. ¶ 23, Exh. 1, Doc. 13.) Like in *Jou*, the bulleted text on the Natural Clean wipes, when viewed in combination with the other packaging features, does not conclusively demonstrate, as Defendant insists, that a reasonable consumer would expect that "Natural Clean" means only that the product is "unscented with a touch of aloe."  (Reply at 11-12.)  Rather, even with the bulleted text, a consumer could plausibly believe that "Natural Clean" wipes do not contain any synthetic compounds, especially ones that are potentially harmful to infants.

Defendant asks this Court to find as a matter of law that a "natural" claim, unless modified by "100%" or "all," cannot plausibly be deceptive.  (Mem. at 13 & n.4.)  While the Court agrees that any qualifier to a "natural" label is certainly relevant to determining whether the claim could lead to consumer confusion, the Court finds no basis in the case law to establish a bright-line rule holding that "natural" claims without "100%" or "all" can never be actionable.  *See, e.g.*, *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *6 (N.D. Cal. Dec. 10, 2013) (denying motion to dismiss because "Natural Care" baby wipes label could confuse a reasonable consumer); *Claudia*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

*Morales, et al. v. Kraft Foods Grp., Inc., et al.*, No. CV14-04387 JAK (PJWx), Doc. 35, at * 8-11 (C.D. Cal. Oct. 23, 2014) (holding that "Natural Cheese" label, even without "100%" or "all" modifier, could plausibly be misleading); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (denying motion to dismiss as a reasonable consumer could be confused by "Active Naturals" claim); *Paulino v. Conopco, Inc.*, No. 14-CV-5145 (JG) (RML), 2015 WL 4895234, at *9 (E.D.N.Y. Aug. 17, 2015) (denying motion to dismiss CLRA, UCL, and FAL claims because "Suave NATURALS" label could confuse consumers). Instead, a court's inquiry should be context-specific. In this case—given the FTC enforcement actions, FDA and French government advisories, and Natural Clean brand packaging—Plaintiff raises a plausible inference that the "Natural Clean" label is misleading.[6]

Finally, in an argument that approaches the philosophical, Defendant asserts that its "Natural Clean" label is not actionable because "natural" has no generally-accepted meaning. (Mem. at 11-16.) Pointing to the fifteen definitions of natural in Merriam-Webster's Collegiate Dictionary, Defendant asserts that the "possible definitions of 'natural clean' are abundant." (Mem. at 14-15.) Given these multiple definitions, as well as the FDA and FTC's failure to define the term, Defendant argues that Plaintiff cannot state a claim. (Mem. at 11-16.) The Court, however, finds Defendant's argument unavailing.

---

[6] Defendant's brief argument that its "Natural Clean" label cannot be actionable because it is a trade name lacks merit. (Mem. at 18; Reply 12-13.) Unless federal law preempts the UCL, FAL, and CLRA (which Defendant does not assert), a label that reasonably relays a factual claim is not somehow immune from California's laws against false advertising merely because it also happens to be a trade name. *See, e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 589 (3d Cir. 2002) (concluding that the product name "Mylanta Night Time Strength" was actionable as false advertising under the Lanham Act); *Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234, at *8 (E.D.N.Y. Aug. 17, 2015) (denying motion to dismiss plaintiff's claims under the UCL, CLRA, and FAL alleging that "Suave NATURALS" brand name was deceptive); *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *18 (C.D. Cal. Sept. 4, 2014).

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.
_____

Most of the fifteen dictionary definitions of "natural" included in Merriam-Webster's Collegiate Dictionary are clearly inapplicable to Pampers' "Natural Clean" claim.  Defendant surely is not, for example, claiming that its wipes are "based on an inherent sense of right and wrong" (as in "natural justice") or "relat[ed] by actual consanguinity as distinguished from adoption" (as in "natural parents").  Merriam-Webster's Dictionary 826 (11th ed. 2003).  On the other hand, one of the more pertinent definitions of natural in Merriam-Webster's Dictionary is "existing in or produced by nature : not artificial."  *Id.*  This definition comports with Plaintiff's allegation that a reasonable consumer would interpret Pampers' Natural Clean claim to mean the product included no synthetic ingredients or at least no potentially harmful ones.  (Compl. ¶ 13.)

Nor does the absence of an FDA or FTC definition of "natural" make it implausible that a reasonable consumer could be misled by Defendant's "Natural Clean" claim.  The FDA and FTC have indicated that their reticence to define the term "natural" should not be construed as endorsing its usage when the term would be misleading.  For instance, an FDA FAQ for "Small Businesses and Homemade Cosmetics" provides that, although "FDA has not defined the term 'natural'" when used in cosmetics, "[t]he same requirements for safety and labeling apply to all cosmetics . . . . includ[ing] . . . making sure that all your labeling is truthful and not misleading."  Small Businesses & Homemade Cosmetics: Fact Sheet, FDA, http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm.  And, while the FTC in 2010 declined to establish generalized guidance on the use of "natural" claims, the Commission cautioned:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.

Guides for the Use of Environmental Marketing Claims, 75 FR 63552-01, 63586 (Oct. 15, 2010).[7]  Of particular relevance to this case, the FTC has taken at least two

_____

[7] In explaining its decision not to adopt a generalized guideline for use of "natural" claims, the FTC noted that "natural may be used in numerous contexts and may convey different

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

enforcement actions against cosmetic manufacturers for their use of "natural" claims
because the product contained phenoxyethanol.  (Compl. ¶ 6.)

In sum, Plaintiff's allegations raise a plausible inference that a consumer could
find Defendant's Natural Clean label misleading.  Because this is sufficient under Rule
12(b)(6), Defendant's Motion to Dismiss Plaintiff's claims for failure to state a claim is
DENIED.

## 2.  Express Warranty Claim

Defendant also moves to dismiss Plaintiff's express warranty claim, arguing that
"[c]ourts routinely reject claims for breach of express warranty based on affirmations that
the product is 'natural.'"  (Mem. at 18-19.)

An express warranty claim requires the defendant to have "(1) made an
affirmation of fact or promise or provided a description of its goods; (2) the promise or
description formed part of the basis of the bargain; (3) the express warranty was
breached; and (4) the breach caused injury to the plaintiff."  *Asghari v. Volkswagen Grp.
of Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013) (citation omitted).

In the few cases that Defendant cites where a "natural"-related express warranty
claim was dismissed, the "natural" label was literally true or the plaintiff had brought suit
under the more-demanding Magnuson-Moss Warranty Act.  *See Viggiano v. Hansen Nat.
Corp.*, 944 F. Supp. 2d 877, 893–94 (C.D. Cal. 2013) (dismissing express warranty claim
because "all natural flavors" label was literally true); *McKinnis v. Kellogg USA*, No.
CV07-2611-ABC (RCx), 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (finding
that "Natural Fruit Flavors" claim was an "entirely accurate statement"); *Astiana v.
Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *4 (N.D.
Cal. July 20, 2012) (Magnuson-Moss Warranty Act claim); *Hairston v. S. Beach
Beverage Co., Inc.*, 12–cv–1429–JFW, 2012 WL 1893818, at *5-6 (C.D. Cal. May 18,
2012) (Magnuson-Moss Warranty Act claim).  More often, courts have held that

---

meanings depending on that context."  Guides for the Use of Environmental Marketing Claims,
75 FR 63552-01, 63586 (Oct. 15, 2010).  This statement does not suggest that "natural" lacks a
commonly-held meaning when used in any particular context, but rather that "natural" may not
have any universal meaning *across* product categories.

---

**CIVIL MINUTES – GENERAL**                                      **14**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                              Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

"natural" labels can constitute express warranties.  *See, e.g.*, *Aguiar v. Merisant Co.*, No.
14-00670-RGK-AGR, 2014 WL 6492220, at *9 (C.D. Cal. Mar. 24, 2014); *Vicuna v.
Alexia Foods, Inc.*, No. C 11-6119 (PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27,
2012); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014);
*Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at
*6 (N.D. Cal. June 2, 2014).

Here, Plaintiff has plausibly alleged that the "Natural Clean" label is false and has
otherwise adequately plead the elements of an express warranty claim (Compl. ¶¶ 57-63),
so Defendant's Motion to Dismiss Plaintiff's express warranty claim is DENIED.


### 3.   Unjust Enrichment Claim

Defendant moves to dismiss Plaintiff's unjust enrichment claim because no such
claim exists under California law and Plaintiff cannot plausibly allege a quasi-contract
claim.  (Mem. at 19-20.)  In *Astiana v. Hain Celestial Grp., Inc.*, the Ninth Circuit
"part[ed] ways" with the district court, essentially finding it improper to dismiss the
plaintiff's "unjust enrichment" cause of action when the claim, in all but its caption, was
a proper quasi-contract claim.  *See* 783 F.3d 753, 762 (9th Cir. 2015).  Because, for the
reasons articulated extensively already, Plaintiff plausibly alleges that a consumer could
have been enticed to purchase Defendant's product based on the allegedly misleading
label, and a plaintiff may plead claims in the alternative, Plaintiff states a quasi-contract
claim.  *See* Fed. R. Civ. P. 8(d)(2); *Astiana*, 783 F.3d at 762.  Defendant's Motion to
Dismiss Plaintiff's claim for "unjust enrichment" is accordingly DENIED.

### C. <u>Request for a Stay</u>

Defendant requests a stay of this case under the primary jurisdiction doctrine or
until the Ninth Circuit resolves pending appeals in *Brazil v. Dole Packaged Foods* and
*Kosta v. Del Monte Foods*.  (Mem. at 20-25.)  Plaintiff opposes a stay on either ground,
and, at minimum, requests that written discovery proceed.  (Opp'n 17-25.)  For the
reasons stated below, the Court denies Defendant's request.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

### 1. Primary Jurisdiction Doctrine

Defendant requests a stay of this suit under the primary jurisdiction doctrine until the FDA releases guidance regulating "natural" labels on cosmetics. (Mem. at 20-22.) The Court finds it unwarranted to indefinitely stay this action pending guidance that the FDA has expressed no immediate interest in issuing.

Under the primary jurisdiction doctrine, a court may stay a case so that an agency tasked with regulating the relevant industry may resolve related technical or policy-laden questions that are uniquely within its expertise. *Astiana*, 783 F.3d at 760. In the Ninth Circuit, "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Id.* (citations omitted). Thus, even if a stay under the primary jurisdiction doctrine would otherwise be warranted, a court should not do so if "the agency is aware of but has expressed no interest in the subject matter of the litigation" or "a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Id.* at 761.

In *Astiana*, the Ninth Circuit concluded that, based on the record before it, the district court did not err in invoking the primary jurisdiction doctrine to stay a suit relating to the use of "natural" labels on various cosmetics. *Id.* Yet, because the district court dismissed the plaintiff's suit (instead of staying the case), the Ninth Circuit reversed the district court's order. *Id.* at 761-62. The Ninth Circuit noted that the district court "may consider" on remand whether further developments "demonstrate that another referral to the agency would be futile." *Id.* at 762. On remand, the district court declined to reinvoke the primary jurisdiction doctrine, finding that the FDA is "aware of but has expressed no interest in the subject matter of the litigation." *Astiana v. Hain Celestial Grp., Inc.*, No. 11-CV-6342-PJH, at *2-3 (Oct. 9, 2015). The district court relied on a letter dated March 7, 2013 by the Director of the FDA Office of Cosmetics and Colors, which "decline[d] to make a determination regarding the term 'natural' in cosmetic labeling" and indicated that "proceedings to define 'natural' do not fit within our current health and safety priorities." (Letter, Exh. 4, Doc. 24.)

This Court agrees with the district court in *Astiana* that, at this point, a stay under the primary jurisdiction doctrine would be improper because the FDA is aware of the controversy surrounding "natural"-branded cosmetics but has chosen not to prioritize the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

issuance of any definition of the term.  Indeed, the Director of the FDA Office of
Cosmetics and Colors stated as much in her March 7, 2013 letter.  (Letter, Exh. 4, Doc
24.)  And, in an FAQ available on the FDA's webpage, the FDA reiterates that the
agency "has not defined the term 'natural' and has not established a regulatory definition
for this term in cosmetic labeling."  Small Businesses & Homemade Cosmetics: Fact
Sheet, FDA, http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm.
This conscious inaction by the FDA demonstrates that holding this case in abeyance
indefinitely would not serve the efficiency principle underling the primary jurisdiction
doctrine.  *See Astiana*, 783 F.3d at 760-61.

Defendant's reference to a FDA Request for Information issued on November 12,
2015 does not change this analysis.  That request for information was specifically limited
to "the use of the term 'natural' in the labeling of *human food products*," *Use of the Term
"Natural" in the Labeling of Human Food Products; Request for Information and
Comments*, 80 FR 69905-01, 69908 (Nov. 12, 2015), and does not suggest that the
agency will also take immediate action to define the proper scope of "natural" claims
relating to *cosmetics*.  For the same reason, Defendant's references to decisions staying
cases related to "natural" *food* claims pending the outcome of these FDA proceedings are
of little relevance to this suit about Pampers' Natural Clean *baby wipes*.  (*See* Mem. at
20-22.)  Defendant has not provided a single case where a district court in this Circuit
stayed a case relating to a "natural" label on a cosmetic under the primary jurisdiction
doctrine pending the outcome of these FDA proceedings.

If the FDA changes course and decides to prioritize the release of guidance on the
use of "natural" claims in cosmetics, Defendant may renew its motion.  But the Court
cannot hold this suit in perpetual limbo on the off chance that the FDA will elect to
regulate "natural" claims in cosmetics.  Accordingly, Defendant's request for a stay under
the primary jurisdiction doctrine is DENIED.

## 2.  Stay Pending the Resolution of *Brazil v. Dole Packaged Foods* and *Kosta v. Del Monte Foods*

Defendant also seeks to stay this suit pending the outcome of two cases on appeal
to the Ninth Circuit: *Brazil v. Dole Packaged Foods* and *Kosta v. Del Monte Foods*.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                              Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

(Mem. at 22-25.)  These cases, Defendant argues, "will clarify Ninth Circuit law on a number of issues that, in this case, would be material to a motion to dismiss, class certification, and summary judgment." (Mem. at 24.)  On the scheduled hearing date for this Motion, the Ninth Circuit issued an unpublished decision in *Brazil v. Dole Packaged Foods* that provides little guidance for this suit about baby wipes.  *See generally Brazil v. Dole Packaged Foods*, No. 14-17480, 2016 WL 5539863 (9th Cir. Sept. 30, 2016).  For the reasons elaborated below, because the Court is unpersuaded that any decision in *Kosta* would substantially affect discovery in this suit, the Court denies Defendant's request for a stay.

When determining whether to hold a case in abeyance, the Ninth Circuit in *CMAX, Inc. v. Hall* identified three salient considerations:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

300 F.2d 265, 268 (9th Cir. 1962).  The party seeking a stay bears the burden of demonstrating the circumstances weigh in favor of holding a case in abeyance.  *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

Under the first factor, the Court begins with the reasonable assumption that a stay — while not "invariably improper or inappropriate" — "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (quoting *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002)).  Defendant, therefore, bears the burden of demonstrating that the other factors demonstrate a "clear case of hardship or inequity."  *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Considering this case stands at the threshold of litigation, Defendant's assertion that declining to grant this stay risks unnecessary duplication is unconvincing.  Four of the five cases that Defendant references in which courts granted stays were unopposed, at much more advanced stages, or both.  *See Wilson v. Frito-Lay N. Am., Inc.*, No. 12-CV-

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                              Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

1586 SC, 2015 WL 4451424, at *1 (N.D. Cal. July 20, 2015) (granting plaintiffs' request for a stay while summary judgment motion remained pending); *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908-BLF, 2015 WL 6674696, at *1, *3 (N.D. Cal. Nov. 2, 2015) (granting unopposed motion to stay after partial summary judgment was denied and class certification decision was approaching); *Park v. Welch Foods Inc.*, 5:12-cv-06449-PSG, ECF 77 (N.D. Cal. Oct. 22, 2015) (granting joint motion to stay case after class certification and summary judgment were "full briefed"); *Astiana v. Hain Celestial Grp., Inc.*, No. 11-CV-6342-PJH, at *3 (Oct. 9, 2015) (granting unopposed motion to stay).[8]  While briefing in this case would potentially be affected if the Ninth Circuit were to issue a path-breaking opinion in *Kosta*, Defendant fails to articulate what specifically could change about the parties' anticipated discovery.

More importantly, the prospect that *Kosta* will result in a dramatic shift in the applicable legal framework for this case is entirely speculative.  The *Kosta* plaintiffs' proposed class definition covered *all* purchasers of *any* SunFresh, FruitNatural, and Del Monte canned tomato product and alleged a broad array of largely unrelated misrepresentations, such as the manufacturer's claims that its products "contain antioxidants," are a "natural source" of lycopene, must be refrigerated, and contain no artificial flavors or preservatives.  *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 220 (N.D. Cal. 2015); *see Martinelli v. Johnson & Johnson*, No. 2:15-CV-01733-MCE-EFB, 2016 WL 521690, at *2 (E.D. Cal. Feb. 10, 2016).  The district court's ascertainability analysis rested on the sweeping scope of this proposed class.  *See Kosta*, 308 F.R.D. at 229.  Given the facts and posture of *Kosta,* it is unlikely that a decision in that case will change the legal framework for this suit.

Defendant also alludes to the materiality and reliance questions posed in *Kosta*. (Reply at 19-20.)  The briefing on these issues in *Kosta* focuses on the interaction between one prong of the *Hinojos* test for establishing materiality and specific prohibitions in California's Sherman Law.  *See Kosta*, Brief of Plaintiff–Appellant, 2016

_____

[8] The fifth case Defendant cites is also distinguishable because the plaintiff there did not suggest that granting a stay would harm her and was suing over a wide array of products.  *See Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *13 (N.D. Cal. Feb. 8, 2016).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-1093-JLS (JCGx)                    Date: October 20, 2016
Title: Veronica Brenner v. Procter & Gamble Co.

WL 552862, at *25-27; *Kosta*, Brief of Defendant–Appellee, 2016 WL 552862, at *37-38; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).  Considering the Sherman Law provisions referenced in *Kosta* all concern *food* labeling, the direct relevance of this issue to this suit about baby wipes is hardly obvious.  In any event, Defendant has not articulated how a potential Ninth Circuit decision on this "unlawful product" theory for establishing materiality could substantially affect discovery in this suit.

While the Court acknowledges that the "Issues Presented" in *Kosta* raise the weighty question of class ascertainability, the Court believes that the parties can conduct discovery while *Kosta* remains pending without considerable risk of hardship or inequity.  *See Martinelli*, 2016 WL 521690, at *2 (refusing to grant a stay in a natural case because the potential for *Kosta* to affect that case was "simply too speculative to justify staying this action").  Defendant's request for a stay, therefore, is DENIED.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss or Stay.  Plaintiff is granted leave to file a First Amended Complaint within 21 days of this Order.

Initials of Preparer:  tg