1  HAROLD P. WEINBERGER  (*admitted pro hac vice*)
   hweinberger@kramerlevin.com
2  NORMAN C. SIMON (*admitted pro hac vice*)
   nsimon@kramerlevin.com
3  EILEEN M. PATT (*admitted pro hac vice*)
   epatt@kramerlevin.com
4  KRAMER LEVIN NAFTALIS & FRANKEL LLP
   1177 Avenue of the Americas
5  New York, New York  10036
   Telephone:  (212) 715-9100
6  Facsimile: (212) 715-8000

7  Ann Marie Mortimer (State Bar No. 169077)
   amortimer@hunton.com
8  HUNTON & WILLIAMS LLP
   550 South Hope Street, Suite 2000
9  Los Angeles, California 90071
   Telephone: (213) 532-2000
10 Facsimile: (213) 532-2020

11 *Attorneys for Defendant*
   THE PROCTER & GAMBLE CO.

12

13              IN THE UNITED STATES DISTRICT COURT
14           FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 | VERONICA BRENNER, Individually and | Case No.:   8:16-1093-JLS-JCG |
16 | on Behalf of All Others Similarly Situated, | |
   | | **THE PROCTER & GAMBLE** |
17 | Plaintiff, | **COMPANY'S OPPOSITION TO** |
   | | **PLAINTIFFS' MOTION FOR CLASS** |
18 | | **CERTIFICATION** |
19 | v. | |
   | | Date:        January 12, 2018 |
20 | THE PROCTER & GAMBLE CO., | Time:        2:30p.m. |
21 | | Judge:     Hon. Josephine L. Staton |
   | Defendant. | |
22

23            **REDACTED VERSION OF DOCUMENT**
24            <u>**PROPOSED TO BE FILED UNDER SEAL**</u>

25

26

27

28 P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
   Case No.:   8:16-cv-01093-JLS-JCG

## **Table of Contents**

Page

I.   INTRODUCTION ............................................................................................. 1

II.  BACKGROUND FACTS ............................................................................... 2

   A.   Genesis & Structure of Current Pampers Wipes Architecture ...................... 2

   B.   "Natural Clean" Wipes Confer an Unscented—as opposed to Perfumed—Clean, Leaving Baby in its Natural Scent ................................... 3

   C.   Removal of Phenoxyethanol .................................................................. 4

III. PLAINTIFFS FALL FAR SHORT OF THEIR EVIDENTIARY BURDEN TO PROVE THAT THE REQUIREMENTS OF RULE 23 ARE MET ................ 5

   A.   Plaintiffs' Conjoint Study is Incapable of Yielding a Relevant and Reliable Classwide Measure of Harm ......................................................... 6

      (1)   The Conjoint Study Fails to Incorporate Supply Side Factors and Competitive Environment ......................................................... 7

      (2)   The Conjoint Study is Incapable of Isolating the Value of the Misinterpretation of the Claim. ........................................... 10

      (3)   Empirical Data Show that Plaintiffs' Method Cannot Reliably Prove Classwide Injury ......................................................... 12

   B.   Each Consumer Must Establish Reliance or Causation .............................. 13

      (1)   Plaintiffs Have Not Established a Common Definition of "Natural" ......................................................................... 15

      (2)   Plaintiffs Fail to Provide Competent Evidence of a Materially Deceptive Statement ............................................................. 16

      a.   Plaintiffs' Survey "Evidence" is Worthless ....................................... 16

      b.   P&G Documents on Which Plaintiffs Rely Show That Context is Key ............................................................................................. 17

      (3)   Evidence Demonstrates that Some Consumers Do Not Rely on Challenged Claim ................................................................. 18

      (4)   Plaintiffs Do Not Even Attempt to Prove Their "Potentially Harmful Ingredients" Theory Classwide, Nor Can They .................. 19

   C.   Plaintiffs Cannot Certify a Multistate Class Under California Express Warranty Law ..................................................................................... 20

      (1)   The Governmental Interest Test Requires the Application of the Law of Each Consumer's State of Purchase ................................. 20

      (2)   Variations in State Law Defeat Predominance ................................ 23

   D.   The Putative Classes are Not Manageable ............................................. 23

IV.  PLAINTIFFS CANNOT CERTIFY A RULE 23(b)(2) CLASS ......................... 24

V.   CONCLUSION .......................................................................................... 25

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

KL3 3144290.1

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*In re 5-Hour Energy*,
   2017 WL 2559615 (C.D. Cal. June 7, 2017) ........................................................ 11, 15

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) ........................................................................ 25 n.25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................................................... 23

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ............................................................................................. 14 n.14

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ................................................................. 8

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ............................................................ 15 n.15, 16, 21

*Badella v. Deniro Mktg., LLC*,
   2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) ........................................................... 16

*Brazil v. Dole Packaged Foods, LLC*,
   2014 WL 5794873 (N.D. Cal. Nov. 6, 2014), *aff'd*, 660 F. App'x 531
   (9th Cir. 2016) ................................................................................................... 10 n.11

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...................................................................... 24 & n.24

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ......................................................................................... 5

*Burr v. Sherwin Williams Co.*,
   268 P.2d 1041 (Cal. 1954) ............................................................................... 22 n.22

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (1993) ........................................................................................ 19

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ......................................................................................... 23

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ................................................................................ 5

*Chow v. Neutrogena Corp.*,
  2013 WL 5629777 (C.D. Cal. Jan. 22, 2013) ........................................................ 6 n.6

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ..................................................................................... 21

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .................................................... 5, 6 & n.7, 7 & n.8, 10, 11

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ............................................................................... 11

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................... 11

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
  2017 WL 3142119 (E.D. Pa. July 24, 2017) ....................................................... 21 n.21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ..................................................................................................... 1

*Davis v. Powertel, Inc.*,
  776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ........................................................... 13 n.13

*Dei Rossi v. Whirlpool Corp.*,
  2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ............................................................ 23

*Duran v. U.S. Bank Nat'l Ass'n*,
  59 Cal. 4th 1 (Cal. 2014) ............................................................................................ 23

*Egwuatu v. S. Lubes, Inc.*,
  976 So. 2d 50 (Fla. Dist. Ct. App. 2008) ............................................................. 13 n.13

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...................................................................................... 24

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ....................................................................................... 16

KL3 3144290.1

*In re First American Home Buyers Protection Corp. Class Action Litig.*,
  313 F.R.D. 578 (S.D. Cal. 2016) ................................................................. 25

*Guido v. L'Oreal, USA, Inc.*,
  2014 WL 6603730 (C.D. Cal. July 24, 2014)...................................... 8 n.10

*Hale v. Enerco Grp., Inc.*,
  288 F.R.D. 139 (N.D. Ohio 2012) ............................................................. 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014)................................................................................. 5

*Herskowitz v. Apple, Inc.*,
  301 F.R.D. 460 (N.D. Cal. 2014)............................................................... 14

*Hodes v. Van Int'l Foods, et al.*,
  2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009)................... 24 n.24

*Hughes v. The Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016)............................................................... 11

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. June 13, 2014)..................... 15, 16 n.16, 18, 24 & n.24

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012)............................................................ 6 n.6

*Koehler v. Litehouse, Inc.*,
  2012 WL 6217635 (N.D. Cal. Dec. 13, 2012)........................................... 17

*In re Korean Ramen Antitrust Litig.*,
  2017 WL 235052 (N.D. Cal. Jan. 19, 2017)............................................... 20

*Kournikova v. Gen. Media Commc'n Inc.*,
  278 F. Supp. 2d 1111 (C.D. Cal. 2003) ..................................................... 17

*In re: Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...................................... 8 n.10

*Lombardo v. Johnson & Johnson Consumer Cos.*,
  124 F. Supp. 3d 1283 (S.D. Fla. 2015)................................................... 6 n.6

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

KL3 3144296.1

*Marlo v. United Parcel Serv., Inc.*,
  251 F.R.D. 476 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) ............... 16, 17

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................... 6, 20, 22, 23

*Melgar v. Zicam LLC*,
  2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) .................................. 22 n.23

*Morales v. Kraft Foods Grp., Inc.*,
  2017 WL 2598556 (C.D. Cal. June 9, 2017) ............................................. 8

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
  189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000) ..................... 21

*In re NJOY Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ....................................... 7, 8 & n.10

*In re NJOY, Inc. Consumer Class Action Litig.*,
  2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ....................................... 8 n.10, 9

*Ono v. Head Racquet Sports USA, Inc.*,
  2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ........................................... 6 n.6

*Perez v. State Farm Mutual Auto. Ins. Co.*,
  628 F. App'x 534 (9th Cir. Jan. 11, 2016) ............................................. 19

*Philip Morris USA Inc. v. Hines*,
  883 So. 2d 292 (Fla. Dist. Ct. App. 2003) .................................... 13 & n.13

*Philips v. Ford Motor Co.*,
  2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ........................................... 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ............................................................. 6

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ................................... 14 n.14, 15, 16

*Saavedra v. Eli Lilly & Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ........................................... 8

*Schellenbach v. GoDaddy.com, LLC*,
  2017 WL 2902683 (D. Ariz. July 7, 2017) ........................................................ 25 n.25

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
  2012 WL 1015806 (N.D. Ill. Mar. 22, 2012) ..................................................... 13 n.13

*Sevidal v. Target Corp.*,
  189 Cal. App. 4th 905 (Ct. App. 2010) ................................................................. 6 n.6

*Swearingen v. Healthy Beverage, LLC*,
  2017 WL 1650552 (N.D. Cal. May 2, 2017)............................................................... 18

*In re Tobacco Cases II*,
  2013 WL 7154428 (San Diego Super. Ct. Sept. 23, 2013) ......................................... 8

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015)........................................................................... 22, 23

*Torres v. Nissan N.A. Inc.*,
  2015 WL 5170539 (C.D. Cal. Sept. 1, 2015) ............................................................ 14

*Turcios v. Carma Labs., Inc.*,
  296 F.R.D. 638 (C.D. Cal. 2014)............................................................................... 19

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (Ct. App. 2009) ................................................................. 6 n.6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................... 5, 6 n.7, 25

*Weinstat v. Dentsply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (Ct. App. 2010) ............................................................... 6 n.6

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)........................................................ 7 n.8

*Wheeler v. Estee Lauder Companies, Inc.*,
  2013 WL 12121543 (C.D. Cal. Feb. 12, 2013) ......................................................... 20

*Zakaria v. Gerber Prods. Co.*,
  No. 15-cv-00200 (JAK) (C.D. Cal. Aug. 9, 2017) ..................................................... 9

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

KL3 3144296.1

**Rules and Regulations**

7 CFR 205.605 ................................................... 15 n.15

Fed. R. Civ. P. 23 ................................................. *passim*

**Other Authorities**

Bryan K. Orme, *Assessing the Monetary Value of Attribute Levels with Conjoint Analysis: Warnings and Suggestions* .................................................. 10 n.12

F. Alan Andersen, *Annual Review of Cosmetic Ingredient Safety Assessments: 2007-2010* .......................................................... 5 n.5

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

KL3 3144290.1

The Procter & Gamble Company ("P&G") respectfully submits this memorandum in opposition to Plaintiffs' motion for class certification ("Pl. Br.").

## I.   INTRODUCTION

Faced with a record demonstrating that class treatment is improper, Plaintiffs attempt to meet their evidentiary burden with innuendo, smoke and mirrors.

At all times, P&G positioned Pampers Natural Clean Unscented wipes (the "Challenged Wipes") with contextualizing language on the package to convey that the wipes gently clean the skin without added perfume, leaving a clean baby that smells like baby's own natural scent. Plaintiffs understood from P&G testimony that the context in which the two words "Natural Clean" appeared on the label was essential to convey this message. So, to contrive classwide evidence that "Natural Clean" (the "Challenged Claim") is material and misleads consumers into believing that none of the ingredients is synthetic, Plaintiffs made sure to avoid this context. Their perception survey showed subjects the two words "Natural Clean" on a green background (the only context that purportedly supports their theory), removing all contextualizing language that defines the term on the package, thereby flouting this Court's ruling that "any qualifier to a 'natural' label is certainly relevant to determining whether the claim could lead to consumer confusion." (Dkt. No. 36 at p. 11). Further, to engineer a supposed classwide price premium in the face of real world data showing that no such premium exists, Plaintiffs' experts created fictional data by fashioning another manipulative survey that is both divorced from marketplace realities, and contravenes the very authorities on which Plaintiffs' experts rely.

As set forth in P&G's motions to exclude the testimony of Dr. Michael Dennis and Colin Weir, Plaintiffs' expert "evidence" should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Even if not excludable, it is insufficient to meet Plaintiffs' burden at this stage for the reasons set forth in this memorandum and in the declarations of Dr. Ran Kivetz and Dr. Keith R. Ugone.

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

## II. BACKGROUND FACTS

### A. Genesis & Structure of Current Pampers Wipes Architecture

In 2012, P&G launched an initiative to simplify the shopping experience for consumers who did not understand the differences between what were at the time six variants of Pampers wipes. (Weinberger Decl. Exh. 2 at PGNCW-00000290; *see* Brizendine Tr. 84).[1] The initiative reduced the number of offerings to three. The new wipes "architecture" targeted "sensitive seekers" as well as "non-sensitive seekers," who prefer either a scented or unscented wipe. (*Id*. at PGNCW-00000294). For the sensitive wipes seekers, P&G offered Pampers Sensitive. For consumers seeking a non-sensitive unscented wipe, P&G offered the Challenged Wipes, and for those seeking a non-sensitive scented wipe P&G offered Pampers Baby Fresh. These two products are essentially identical apart from the perfume ingredient in Baby Fresh, and were not new but had previously been marketed in the same formulations under the names "Softcare Unscented" and "Softcare Baby Fresh," respectively. (Brizendine Tr. 84; Weinberger Decl. Exh. 2 at PGNCW-00000300). P&G also adopted a new color scheme for the packaging to help consumers differentiate between variants, while maintaining elements of the prior versions to help transition consumers. (Brizendine Tr. at 87). Because a green aloe leaf icon was previously featured on the packaging of Softcare Unscented, the color green and the green aloe leaf icon were used on the packaging of the Challenged Wipes. (Brizendine Tr. 89, 90-91). The Challenged Wipes first shipped to stores in the summer of 2012, but the prior iteration, Softcare Unscented, was not removed from store shelves. For a period of about 3 months, both versions were offered for sale to putative class members. (Brizendine Tr. 8 (as corrected on errata sheet)). Neither the wholesale nor retail prices of the Softcare Unscented wipes changed with

---

[1] Citations to deposition transcripts are referenced by each witness's last name. The transcript excerpts and Declarations of Dr. Ran Kivetz ("Kivetz Decl.") and Dr. Keith R. Ugone ("Ugone Decl.") are attached to the Declaration of Harold P. Weinberger, dated October 27, 2017 ("Weinberger Decl.").

1   the re-branding of the product as Natural Clean Unscented.  (Ugone Decl. ¶¶ 48–68).

2   Pampers wipes are priced pursuant to an internal two-tier system.  Pampers

3   Sensitive is P&G's premium Tier 1 brand and employs a thicker substrate, commanding

4   a higher price per wipe than both Baby Fresh and the Challenged Wipes, which

5   comprise P&G's Tier 2 "mainline" offering.  (Weinberger Decl. Exh. 3 at PGNCW-

6   00000181; *id.* at Exh. 26 at PGNCW00000226).  Throughout the class period, P&G sold

7   the Challenged Wipes and Baby Fresh to its retail customers *at the exact same price.*

8   (Brizendine Tr. 314).  Extensive empirical data also demonstrate that consumers have

9   not paid a retail price premium for the Challenged Wipes over Baby Fresh.  (Ugone

10  Decl. ¶¶ 56–68).

11      **B.    "Natural Clean" Wipes Confer an Unscented—as opposed to**

12          **Perfumed—Clean, Leaving Baby in its Natural Scent**

13  As Chad Brizendine, former Pampers Brand Manager, explained, P&G's choice

14  of the Natural Clean Unscented name was inspired by a competitive brand, Huggies,

15  which used the name "Natural Care Unscented" for its unscented hypoallergenic wipe

16  variant.  (Brizendine Tr. 95–96).  P&G positioned the phrase "Natural Clean" to convey

17  that the wipes gently clean the skin without any "unnatural" scent and contain other

18  contextualizing attributes.  (Brizendine Tr. 184).[2]  When introduced in 2012, other such

19  claims on the label included "hypoallergenic" and "touch of aloe."  (Weinberger Decl.

20  Exh. 5).  The contextualizing language evolved over time – for example, "touch of aloe"

21  was removed in 2015 to coincide with the removal of that ingredient – but the

22  "Unscented" claim has consistently remained in close proximity to the Challenged

23  Claim throughout the putative class period.[3]  As Mr. Brizendine repeatedly explained,

24  _____

25  [2] Notably, Plaintiffs rely on the testimony of Jeff White to criticize P&G's interpretation
    of the Challenged Claim.  (Pl. Br. 5).  Mr. White's lack of detailed knowledge on this
    issue is not surprising; he did not recall why the Challenged Claim was selected (Tr.

26  62), and he was not designated by P&G to give testimony on its meaning.  Mr.
    Brizendine was P&G's corporate designee on this issue.

27  [3] Plaintiffs do not dispute that the "aloe" comports with their definition of a "natural"

28  ingredient.  In 2015, the aloe was removed from the lotion in response to concerns from

_____

3

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

the positioning of the Wipes is essential to understand the meaning of the Challenged Claim. (Brizendine Tr. 188-89 ("you have to take into account . . . the design of the package, the brand name, how all of that fits together"; one cannot "separate those because any one variable in isolation doesn't necessarily mean much"); *id*. at 110 (consumers do not rely on name of the product alone)).

This clear positioning of the Challenged Wipes is critical in view of recent market entrants with an entirely different "natural" positioning; namely, focused on ingredients sourced from particular locations or manufactured using certain methods. (Brizendine Tr. 256; *id*. 250-51). This market segment is a "whitespace" in which P&G does not presently compete. (Brizendine Tr. 223, 248-49). These wipes are more expensive than any of the Pampers wipes. (Weinberger Decl. Exh. 6 at PGNCW-0000650). Because consumers now have "the widest spectrum" of definitions of the term "natural," P&G "defined [it]s product very clearly and maintained that [definition] over time" with contextualizing language on the package. (Brizendine Tr. 227-28; *see id*. 253).[4]

## C.   Removal of Phenoxyethanol

In 2016, P&G developed a new preservative system for the Pampers wipes lineup, which involved the removal of phenoxyethanol ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉ (Weinberger Decl. Exh. 7 at PGNCW-00001581). The change was not initiated, as Plaintiffs suggest, because P&G agreed with a French agency's negative assessment of the ingredient. (Pl. Br. 8). P&G never doubted its safety (White Tr. 250; Weinberger Decl. Exh. 8 at PGNCW-00003438-41 (▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); *id*. Exh. 9 at PGNCW-

---

parents and doctors that some children suffered from allergic reactions to aloe, and to achieve cost savings (White Tr. 181). As Mr. Brizendine explained, the removal of aloe did not change the positioning of the Challenged Wipes. (Tr. 198).

[4] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

---

00001836, 1841 (published study showing that wipe formulated with phenoxyethanol consistently resulted in less skin irritation than wipe containing only water), but made a business decision solely to avoid the external relations risk created by the misperception that it was harmful. (White Tr. 90). Validating P&G's assessments, the European Commission's Scientific Committee on Consumer Safety ("SCCS") refuted the French agency's finding.[5]

## III. PLAINTIFFS FALL FAR SHORT OF THEIR EVIDENTIARY BURDEN TO PROVE THAT THE REQUIREMENTS OF RULE 23 ARE MET

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014); *see also, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Plaintiffs must establish "by at least a preponderance of the evidence" that the requirements of Rule 23 have been met. *Brown v. Kelly,* 609 F.3d 467, 476 (2d Cir. 2010). *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 551 n.88 (C.D. Cal. 2012). A district court's "rigorous analysis" of Rule 23's requirements "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351.

Rule 23(b)(3)'s predominance requirement is met only if a plaintiff can "demonstrate the superiority of maintaining a class action and show 'that the questions

---

[5] In fact, both before and after the French agency's report was published in 2014, independent research affirmed the safety of phenoxyethanol. For example, the US Cosmetic Ingredient Review ("CIR") "confirmed that phenoxyethanol is safe in the present practices of use and concentration" of 0.6% in baby wipes. (Weinberger Decl. Exh. 10 at PGNCW-00001745-46, F. Alan Andersen, *Annual Review of Cosmetic Ingredient Safety Assessments: 2007-2010*. International Journal of Toxicology (2011)). The Challenged Wipes contained ▬▬▬ phenoxyethanol, *less than half* of the concentration found safe by CIR. In October 2016, the SCCS, a committee of independent scientists, concluded that phenoxyethanol was "safe for use as a preservative with a maximum concentration of 1.0%" (*id.* at Exh. 11 at PGNCW-00003748). The SCCS concluded that the French agency's study on which Plaintiffs rely used "an unrealistic default body weight" when calculating the safe exposure for children to cosmetic products containing phenoxyethanol. (*Id.* at PGNCW-00003746).

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG

of law and fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing Rule 23 (b)(3)).  Plaintiffs must prove that they were exposed to a materially deceptive claim, that this deception was an immediate cause of their injury, and that they incurred monetary harm because of their purchases.[6]  Plaintiffs have failed to meet their burden of proving that any of these elements are capable of classwide resolution.[7]

### A.   Plaintiffs' Conjoint Study is Incapable of Yielding a Relevant and Reliable Classwide Measure of Harm

Rule 23 commands "a hard look at the soundness of [the] statistical models that purport to show predominance," and if the "model cannot withstand this scrutiny then, that is not just a merits issue."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253, 255 (D.C. Cir. 2013) (discussing *Comcast*, 569 U.S. at 35-36).  Plaintiffs argue for a lesser showing, asserting that they need not "show that [their] method will work" (Pl. Br 11).   However, to perform a "rigorous analysis" of Rule 23's

---

[6] *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Ct. App. 2009) (CLRA); *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (FDUTPA); *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 924 (Ct. App. 2010) ("Even after the *Tobacco II* decision, the UCL and FAL still require some connection between the defendant's alleged improper conduct and the unnamed class members who seek restitutionary relief."); *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *15 (C.D. Cal. Mar. 8, 2016) (as to unjust enrichment, "[t]he person receiving the benefit is required to make restitution only if the [individual] circumstances are such that . . . it is unjust for the person to retain it" (citation omitted)). Contrary to Plaintiffs' assertion that reliance is not required under express warranty law (Pl. Br. 17), where, as here, there is an "absence of privity, California law requires a showing that a plaintiff relied on" the alleged warranty. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012).  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (Ct. App. 2010) is not to the contrary, as the express warranty claim in that case was based on privity. *See Chow v. Neutrogena Corp.*, 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013) (individualized issues of reliance preclude certification of express warranty claim where plaintiff failed to prove materiality classwide).

[7] The focus here is on Rule 23(b)(3)'s predominance requirement because it is "more demanding" than the mandates of Rule 23(a) (*Comcast*, 569 U.S. at 34), but because Plaintiffs have not met their evidentiary burden to establish that deception, materiality, reliance or injury are subject to common proof, the commonality requirement of Rule 23(a)(2) is also not satisfied. *See Dukes*, 564 U.S. at 350.

---

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG

requirements, courts must "determine that whether expert evidence is persuasive, which may require the Court to resolve methodological disputes." *See Philips v. Ford Motor Co.*, 2016 WL 7428810, at \*13 (N.D. Cal. Dec. 22, 2016).

Faced with real world data refuting Plaintiffs' theory that the class paid a "price premium" for the Challenged Claim, Dr. Dennis and Mr. Weir flouted the very authorities on which they rely and constructed a conjoint study divorced from marketplace realities, designed to contrive a premium that does not exist. It is therefore unsurprising that their method does not – and cannot – demonstrate the existence of a classwide price premium attributable to this theory in accordance with *Comcast*, 569 U.S. at 35-36.[8]

### (1)   The Conjoint Study Fails to Incorporate Supply Side Factors and Competitive Environment

Plaintiffs concede that a price premium injury is the difference, if any, between the market price paid by consumers and the "true market price" reflecting "the impact of . . . the fraudulent business practices." *In re NJOY Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015) ("*NJOY I*"). To calculate the "true market price" of the Wipes, Dr. Dennis purports to determine the price of the Wipes in a fictional "but for" world in which the word "Natural" was removed from the label. This calculation requires an assessment of the competitive environment and supply-side factors in the "but for" world, but neither Dr. Dennis nor Mr. Weir does so. Because market prices necessarily depend upon the interaction of supply and demand, courts have routinely declined to certify classes where, as here, plaintiffs offered a damages

---

[8] Plaintiffs contend that "other courts" accept conjoint analyses to measure classwide injury (Pl. Br. 12). But "'the soundness of the methodology' in the abstract" means very little under *Comcast*, where a "mismatch between the damages model and the plaintiff[s'] liability case ma[kes] class certification inappropriate . . . ." *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at \*14 (N.D. Cal. Dec. 15, 2014); *see id.* ("[T]he Court is obligated to do more than rubberstamp a proposed damages class merely because a plaintiff's expert purports to have used a peer reviewed methodology such as a regression analysis."). Indeed, as set forth herein, conjoint models have been rejected by other courts.

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

model that failed to adequately consider both. *See id.*; *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014). *See also, e.g., Morales v. Kraft Foods Grp., Inc.*, 2017 WL 2598556 (C.D. Cal. June 9, 2017).

"Conjoint analysis is a statistical technique capable of using survey data to determine how consumers value a product's individual attributes – often called the market's willingness to pay." *Saavedra*, 2014 WL 7338930, at *4. For that reason, a conjoint survey can theoretically isolate only the "demand" side of the equation. But conjoint surveys are not intended to measure that demand relative to supply, and for that reason do not determine a "price premium" for a product.[9] *See, e.g., In re Tobacco Cases II,* 2013 WL 7154428, at *7 (San Diego Super. Ct. Sept. 23, 2013) ("conjoint analysis has not been accepted in the relevant scientific community as a means of assigning monetary value to any particular attribute."); *NJOY I*, 120 F. Supp. 3d at 1119 (conjoint analysis "looks only to the demand side of the market equation, converting what is properly an objective evaluation of relative fair market values into a seemingly subjective inquiry of what an average consumer wants.") (quotation marks and citation omitted); *Saavedra,* 2014 WL 7338930, at *5; *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *12 (N.D. Cal. Mar. 6, 2014). Put simply, a damages methodology utilizing conjoint analysis that fails to "consider other factors in a functioning marketplace," cannot "address the fair *market* value of [a product] absent" the challenged claim. *NJOY I*, 120 F. Supp. 3d at 1119 (emphasis in original).[10]

---

[9] Plaintiffs' contention that P&G used conjoint studies to analyze consumers' willingness to pay does not, as Plaintiffs suggest, translate into a concession that conjoint studies can be used in litigation to determine whether consumers in fact paid a price premium. To the contrary, it is consistent with the proposition that conjoint studies are used to determine the demand side of the equation.

[10] Plaintiffs rely on *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730 (C.D. Cal. July 24, 2014) to argue that conjoint analysis can be used to determine a price premium. But as *NJOY I* observed, *Guido* and other courts which permitted the use of similar survey techniques to assess injury in class actions that "did not address whether market supply factors must be taken into consideration" cannot stand for the proposition "that market factors can be ignored in determining the price premium attributable to product misrepresentations." *NJOY I*, 120 F. Supp. 3d at 1121. Another case on which Mr. Weir relies for this point, *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal.

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG

Here, Plaintiffs' experts conceded that their supply side considerations are limited to historical data on pricing and sales. (Weir Tr. 168-76; Dennis Tr. 239-41). Plaintiffs advance two fallacies to excuse their failure to incorporate other market factors, neither of which passes muster.

First, Plaintiffs' experts insist that their use of market prices in the product profile choices accounts for all necessary supply side considerations (Weir Tr. 150 -161; Dennis Tr. 62-65). However, as Judge Walter explained, a conjoint method that merely incorporates "different market brands and actual market prices directly into the choice sets" still only accounts for the demand side of the equation, "[ignoring] the price at which [defendant], and other [competing] manufacturers, would be willing to sell their products." *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, *5-8 (C.D. Cal. Feb. 2, 2016) ("*NJOY II*"). Historical market prices are simply not a complete proxy for supply side concepts in the counterfactual "but for" world Dr. Dennis creates. Plaintiffs' model cannot measure how the change in demand for the Challenged Wipe without the Claim will alter the price at which a manufacturer is willing to sell, how competing manufacturers respond in terms of pricing their own goods, or how retailers will respond in setting prices in the market. All of those considerations will have an impact on any "premium" for a product, if one exists at all. *Id. See Zakaria v. Gerber Prods. Co.*, No. 15-cv-00200 (JAK) (Dkt. No. 297, p. 26) (C.D. Cal. Aug. 9, 2017) (Weinberger Decl. Exh. 12) (conjoint analysis incapable of proving classwide premium where "Plaintiff has failed to show that the methodology . . . sufficiently accounted for the actual price of [the product], *or the market conditions in which that product was sold*.") (emphasis added); *see* Motion to Exclude Weir at 9-12.

Second, Plaintiffs' experts contend that because sales are fixed as a matter of

---

Oct. 27, 2016), held that plaintiffs' model was in accord with *NJOY I* because it used market prices, but as set forth above, the ruling contradicts (and notably does not acknowledge) *NJOY II*. That other courts have accepted similarly untenable explanations from experts simply have no bearing on this Court's analysis.

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG

history, they need not account for the change in quantity (supply) of the Wipes that would occur in the "but-for" world in which demand for the Wipes decreases absent the Claim.  However, as set forth in P&G's motions to exclude, this assumption is entirely at odds with basic economic precepts, including the very authorities on which plaintiffs' experts rely. (Motion to Exclude Weir at 16-20).[11]  By definition, every case in which a conjoint study is used to determine a price premium deals with historical sales.  For this reason alone, Plaintiffs' methodology cannot reliably measure a classwide premium.[12]

### (2)   The Conjoint Study is Incapable of Isolating the Value of the Misinterpretation of the Claim.

"[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case" must "measure only those damages attributable to" the plaintiff's specific theory of liability.  *Comcast*, 569 U.S. at 35 (quotation marks and citation omitted).  Plaintiffs theorize that the class was harmed in the amount of a "price premium solely attributable to the 'Natural Clean' representation" on account of their "central allegation" that "'Natural Clean' is false and misleading because the Wipes contain synthetic chemicals." (Pl. Br. 11).  Under *Comcast*, therefore, Plaintiffs' model

---

[11]  Confronted at his deposition with the fact that his method contravenes his own authorities, Mr. Weir claimed to have seen other unnamed authorities that support his contention.  After repeated requests for these authorities over 14 days, Plaintiffs produced them on the day P&G's expert reports were due.  Unsurprisingly, they are demonstrably inapposite. (Ugone Decl. ¶ 163, n. 300).  *See Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *12 (N.D. Cal. Nov. 6, 2014) (decertifying class where many of the experts' assumptions "upon which his model relie[d]" were "either false or untested"), *aff'd*, 660 F. App'x 531 (9th Cir. 2016).

[12]  As set forth in P&G's motions to exclude, Plaintiffs' experts deviated from the rules set forth in their own authorities to properly account for even the demand side of the equation, which further demonstrates that Plaintiffs' model is an utter contrivance. (Motion to Exclude Weir at 12-16).  For example, Dr. Dennis's "market simulation" failed to include the relevant attributes in the choice profiles or incorporate other competitive offerings – contradicting a Sawtooth textbook on which Mr. Weir relies which states that a market simulation must "simulat[e] a realistic competitive scenario." Bryan K. Orme, *Assessing the Monetary Value of Attribute Levels with Conjoint Analysis: Warnings and Suggestions*, Sawtooth Software, Inc., 2005, at 4.  Indeed, Mr. Weir acknowledged that Dr. Dennis's simulations were not done the way Sawtooth requires. (Weir Tr. 122-23).  And even if the profile choices in the conjoint survey and the subsequent market simulation could accurately measure demand, Mr. Weir and Dr. Dennis fail to offer any functional model to account for supply side considerations.

---

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

must "isolate the price premium associated with misleading consumers in that particular fashion." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 579 (C.D. Cal. 2014). However, as has been the case with Weir's models in the past, Plaintiffs' model here likewise is incapable of "segregat[ing] the percentage of the price premium specifically attributable to a customer's belief" that the Wipes contain no synthetic ingredients. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1024-25 (C.D. Cal. 2015) (Weir's method alone was inadequate because at best it calculates "the price premium attributable to use of the term '100% Natural' and all of the meanings consumers ascribe to it" instead of "segregate[ing] the price premium attributable to" the alleged misinterpretation of the challenged claim); *In re 5-Hour Energy*, 2017 WL 2559615, at *11 (C.D. Cal. June 7, 2017) (Weir's method failed to account for value of non-misleading interpretation an "energy" claim; "[e]ven if Plaintiffs[] are correct that caloric energy [as opposed to subjective feelings of alertness] is the dominant definition of "energy," Plaintiffs must . . . isolate the specific premium paid for five hours of caloric energy").

Plaintiffs do not allege that the Challenged Claim is literally false, capable of no interpretation other than the one alleged. Indeed, as set forth herein, some consumers may understand that the Wipes include synthetic ingredients. Accordingly, a portion (or all) of a premium attributable to the Claim – to the extent such premium exists – may be attributable to non-misleading messages conveyed by the Claim; namely, that the Wipes gently clean the skin without any "unnatural" scent. Although Dr. Dennis claims to have tested the impact of other label claims, this test did not permit him to assess whether contextualizing language (such as unscented and hypoallergenic) has any value and whether it affects (or interacts with) the valuation of the name "Natural Clean." (Kivetz Decl. ¶¶ 97–113). Thus, Plaintiffs' method improperly "identifies damages that are not the result of the wrong." *Comcast*, 569 U.S. at 38. *See Hughes v. The Ester C Co.*, 317 F.R.D. 333, 355-56 (E.D.N.Y. 2016) (denying class certification because Weir's method failed to account for fact that challenged claim "conceivably

encapsulates some, if not all," of the surrounding representations on the package).

### (3) Empirical Data Show that Plaintiffs' Method Cannot Reliably Prove Classwide Injury

Named Plaintiffs testified that they paid a premium for the Challenged Wipes over Pampers Baby Fresh wipes. (Banegas Tr. 96-97; Brenner Tr. 102). Baby Fresh is, in fact, the true market competition for the Challenged Wipes. (Brizendine Tr. 229; Ugone Decl. ¶¶ 29–34). Indeed, Plaintiffs concede that the two products are essentially identical apart from the scent ingredient. (Pl. Br. 2). However, as Dr. Ugone details, actual observed wholesale and retail pricing data for the Challenged Wipes as compared with Baby Fresh do not support Plaintiffs' claim that there was a classwide premium attributable to the Challenged Claim. (Ugone Decl. ¶¶ 35–47). For example, the below figure presents the weekly average unit price of the 192-count pack of the Challenged Wipes and Baby Fresh wipes from September 2013 through August 2017 for Walmart retail stores located in San Diego, California:



**Figure 2**
**San Diego Weekly Average Unit Prices in Walmart Stores**
**Natural Clean Wipes (192 Count) v. Baby Fresh Wipes (192 Count)**
**September 2013 - August 2017**

(Ugone Decl. ¶ 46, Figure 2). Further illustrating the fact that Plaintiffs' model is a sham, Dr. Ugone demonstrated that comparisons of wholesale and retail pricing of the

Challenged Wipes before and after the product name was changed to "Natural Clean" do not support a classwide premium.  (Ugone Decl. ¶¶ 48–68).

Mr. Weir previously explained that a different method using empirical data is his "first choice."  (Weir Tr. 36-37).  Confronted with the reality that empirical data undermines Plaintiffs' theory, however, he and Dr. Dennis have fabricated a rigged study that is divorced from reality in order to contrive a premium from whole cloth. Contravening all well-accepted principles on conjoint design, Mr. Weir and Dr. Dennis offer bogus justifications for their method in an attempt to create a "battle of the experts" to survive class certification.  The Court should not accept Plaintiffs' work of fiction, particularly in the face of P&G's evidence proving that the purported price premium does not exist.

### B.   Each Consumer Must Establish Reliance or Causation

Plaintiffs argue that the Florida Class need not prove individual causation under the Florida Deceptive and Unfair Trade Practices Act, but causation may not be presumed classwide where a determination of causation depends on a consumer's individual motivation and understanding of the challenged claim.  *See Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 295 (Fla. Dist. Ct. App. 2003) (trial court erred in certifying class where "individual purchasers' subjective motivation[s]" played a significant causal role in purchase of cigarettes labeled and marketed as "light").[13] Likewise, consumers who were not deceived into purchasing the Wipes "do[] not have a claim for unjust enrichment because such a consumer has not been unjustly induced into

---

[13] Plaintiffs rely heavily on *Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. Dist. Ct. App. 2000), but the author of that decision, Judge Padovano, has since explained that "individualized inquir[ies]" into consumers' "actual knowledge" may, in fact, be required to establish causation.  *See Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53 (Fla. Dist. Ct. App. 2008); *accord In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2012 WL 1015806, at *10 (N.D. Ill. Mar. 22, 2012) ("the great weight of recent authority in [the Florida state appellate courts] . . . holds that causation [under FDUTPA] typically requires individualized proof") (collecting cases). Indeed, in decertifying a class, the court in *Phillip Morris* questioned "whether *Davis* gives fair consideration to the principle of causation" in FDUTPA."  883 So. 2d at 294.

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

conferring a benefit on the defendant." *Torres v. Nissan N.A. Inc.*, 2015 WL 5170539, at *6 (C.D. Cal. Sept. 1, 2015).  A claim under the "unfair" prong of the UCL requires proof that any harm outweighed the utility of the Challenged Claim.  However, "Plaintiffs do not propose any method of proving utility classwide." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 477 (N.D. Cal. 2014).  Instead, they assert – citing no evidence or law – that there is no utility of the Challenged Claim (Pl. Br. 20), ignoring the fact that it was intended to and in fact served to differentiate the Challenged Wipe from other Pampers variants.  Thus, "determining utility will likely require individualized determinations tailored to the particular circumstances of each class member's transaction.  Weighing that utility against the harm suffered by the class members will similarly require individualized inquiries." *Herskowitz*, 301 F.R.D. at 477.

Finally, Plaintiffs are wrong when they argue that they need not prove individual reliance under the UCL "fraud" prong, FAL or CLRA because they have "prov[en] that Defendants made what a reasonable person would consider a material misrepresentation."  Pl. Br. 18 (citation omitted).[14]  "Whether class reliance may be presumed in a particular case does not appear to depend on any clear rules but on common-sense judgments about its appropriateness." *Hale v. Enerco Grp., Inc.*, 288 F.R.D. 139, 148 (N.D. Ohio 2012) (citing *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004)).  Here, as shown below, an inference of class-wide reliance is inappropriate because class members' reactions to the Challenged Claim vary and Plaintiffs' "evidence" of materiality and deception is inadequate and cannot trigger an inference.

---

[14] At the same time, Plaintiffs contend that they need not offer evidence of a material misrepresentation, relying on *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013).  (Pl. Br. 19).  *Amgen* is inapposite. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 n.17 (S.D. Fla. 2014) (explaining why Supreme Court's ruling in *Amgen*, that proof of materiality is unnecessary to certify class of securities investors, is inapplicable to claims of deceptive conduct alleging violation of consumer fraud laws).

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

### (1) Plaintiffs Have Not Established a Common Definition of "Natural"

"Where plaintiffs fail to establish a controlling definition for a key term in an alleged misstatement, courts have found that materiality is not susceptible to common proof." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *8. Here, Plaintiffs theorize that the Challenged Claim communicates that Challenged Wipes are "natural" (which Plaintiffs define as containing no "synthetic chemicals"), but Plaintiffs fail to prove that class members share their definition. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) (declining to presume reliance; "there is no single, controlling definition of the word 'natural'"); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 695 (S.D. Fla. 2014) (same).

Consumers' interpretation of the term varies. (Brizendine Tr. 202-06; White Tr. 112, 146-47). For example, some consumers, like one woman who Dr. Dennis interviewed in connection with his conjoint study, have done their own "research" and "determined that the Huggies Natural Care product was the closest to her ideal" of a "natural" wipe. (Weinberger Decl. Exh. 17 at cell G6). Plaintiff Brenner, on the other hand, stopped purchasing that very same product after she concluded that it did not fit *her* definition of "natural." (Brenner Tr. 55-58). Other consumers may understand that a "natural" wipe is one that confers an unscented clean, such that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Kopel Exh. 2 at PGNCW-00001631; *supra* pp. 3-4). *See Jones*, 2014 WL 2702726, at *14 (class-wide inference of reliance inappropriate where "even if the challenged statements were *facially* uniform consumers' *understanding* of those representations would not be").[15]

---

[15] Lack of a common definition is further illustrated by Plaintiffs' position that the water is not natural because it is purified (White Tr. 175-76), and that xanthan gum and sodium citrate are not natural because they are deemed to be "synthetics" permitted in foods labeled organic (Pl. Br. 9 citing 7 CFR 205.605). *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 507-08 (S.D. Cal. 2013) (declining to certify class challenging "natural" label on food that contained ingredients permitted to be in certified organic foods, because some consumers equate natural and organic).

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

### (2)   Plaintiffs Fail to Provide Competent Evidence of a Materially Deceptive Statement

Even assuming Plaintiffs could overcome this hurdle, they have not come forward with adequate "common proof" of a material misrepresentation, which is required in order for a presumption of reliance to apply. *Badella v. Deniro Mktg., LLC*, 2011 WL 5358400, at *9 (N.D. Cal. Nov. 4, 2011); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 509 (S.D. Cal. 2013) (class certification under California express warranty law and consumer protection statutes improper where plaintiffs make "insufficient showing that the [challenged] representation is materially misleading."); *Randolph*, 303 F.R.D. at 695–96 (class certification under FDUTPA improper where "Plaintiff has not established whether the use of the term 'All Natural' in this context would deceive an objectively reasonable consumer.")

### a. Plaintiffs' Survey "Evidence" is Worthless

Trying to meet that burden, Plaintiffs offer a consumer perception survey conducted by Dr. Dennis, but, as shown in P&G's motion to exclude his testimony, the litany of fatal flaws in the survey's design and implementation eviscerates its evidentiary force. *See Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 486 (C.D. Cal. 2008) (flawed "survey cannot qualify as common proof of" essential element of claim), *aff'd*, 639 F.3d 942 (9th Cir. 2011). Among other major infirmities, Dr. Dennis failed to show respondents actual packages that class members purchased throughout the class period.[16] Instead, he merely tested consumer perception of the words "Natural Clean" on a green background divorced from any other context. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (*per curiam*) (in case alleging false advertising, "context is crucial."). That is a particularly critical error here, where the context defines the meaning of the Challenged Claim. (*Supra* pp. 3-4).

---

[16] The label claims contextualizing the Challenged Claim changed over time, which further militates against class certification. (Weinberger Decl. Exh. 5). *Jones*, 2014 WL 2702726, at *14 (individual issues of deception, materiality and reliance predominate where "consumers were exposed to label statements that varied by," among other things, "time period").

Plaintiffs concede that the meaning of the term "natural" depends on the context in which it appears, including explanatory language that can inform the meaning of the term.  (Banegas Tr. 78).   Nevertheless, Plaintiffs cherry-picked the contextualizing element they wanted to show respondents ("a green background" (Pl. Br. 3, 4)) and failed to display the remainder of the packaging with all of its contextualizing language. *See, e.g., Kournikova v. Gen. Media Commc'n Inc.*, 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) (excluding survey where respondents were not permitted to examine context of challenged claim).

Moreover, Dr. Dennis knew that consumers would likely be confused by the Challenged Claim in isolation.  (Brizendine Tr. 195-96 ; 200-01 (confusion may ensue if one "removes all of the characteristics of the Pampers Natural Clean wipes as we've positioned them today"); *id*. 197-98 (as currently positioned the Challenged Claim "wouldn't be misleading because it comes with a brand name and clear positioning and a bunch of attributes.")).  Particularly when coupled with the leading and inappropriate questions he used, it is apparent that this survey was designed to accomplish a pre-ordained result. (Motion to Exclude Dennis at 20-24).

### b. P&G Documents on Which Plaintiffs Rely Show That Context is Key

"Plaintiff's other evidence does not fill the gap" left by Dr. Dennis's survey. *Marlo*, 251 F.R.D. at 486.   Indeed, Plaintiffs offer no evidence whatsoever demonstrating the impact of the Challenged Claims in proper context.  *See, e.g., Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) ("[T]o determine whether a reasonable consumer is likely to be deceived, the statement must be read in context of the entire advertisement.").

The P&G documents that Plaintiffs cite in fact demonstrate the importance of contextualizing language that defines the meaning of the Challenged Claim.  The report Plaintiffs cite actually shows ███████████████████████████████

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

(Kopel Exh. 2 at PGNCW-00001631; *see* Brizendine Tr. 120-21).

(White Tr. 265-66),

(Kopel Decl. Exh. 3 at PGNCW-00002858; White Tr. 264).[18]   Other referenced documents relate to

These documents do not provide common evidence that the Challenged Claims are materially deceptive classwide and thus do not support a presumption of reliance. *See Jones*, 2014 WL 2702726, at *16; *Swearingen v. Healthy Beverage, LLC*, 2017 WL 1650552, at *4 (N.D. Cal. May 2, 2017) (courts do not presume reliance "where the record will not permit it").

### (3)   Evidence Demonstrates that Some Consumers Do Not Rely on Challenged Claim

The testimony of the named Plaintiffs and other evidence about why consumers have purchased the Challenged Wipes set out in Dr. Ugone's declaration demonstrate that consumers have many reasons for purchasing the Wipes that do not include the Challenged Claims. (Ugone Decl. ¶¶ 76–81; Banegas Tr. 64-67). For example, many consumers purchased the Challenged Wipes solely on account of the Pampers brand.

---

[17] *Compare* test stimulus, Weinberger Decl. Exh. 25 at PGNCW-00003922, *with* in-market label, *id.* at Exh. 5 at PGNCW-00000010.

[18] Plaintiffs suggest that P&G knew that consumers interpreted "Natural Clean" as meaning that the Wipes contained no synthetic ingredients by pointing to the

However, this comment is entirely in accord with how P&G has consistently positioned the Challenged Wipes. (White Tr. 261

)

---

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG

1  (*See e.g.,* Banegas Tr. 36 ("[Pampers products are] what we just always used.  We're

2  loyal to the brand.").  Indeed, as Mr. Brizendine explained, not all consumers "even

3  know the names of the products they buy."  (Brizendine Tr. 110-11 (research shows

4  "people say 'I buy the teal one . . . and they don't even know what the name of the

5  product is.");  *accord* Banegas Tr. 41 (purchased "regular" Pampers wipes in "a light

6  blue box I don't recall name offhand")).  Because "the circumstances here show that

7  class-wide inference of reliance and causation is not appropriate" for Plaintiffs' claims,

8  "individual issues of reliance predominate for those claims."  *Turcios v. Carma Labs.,*

9  *Inc.*, 296 F.R.D. 638, 648 (C.D. Cal. 2014); *see also Caro v. Procter & Gamble Co.*, 18

10  Cal. App. 4th 644, 668 (1993).

11              **(4)    Plaintiffs Do Not Even Attempt to Prove Their "Potentially**
                        **Harmful Ingredients" Theory Classwide, Nor Can They**
12

13      Plaintiffs' theory that the Challenged Claim is misleading because the Wipes

14  contain "potentially harmful ingredients" is based on the presence of phenoxyethanol,

15  which has been repeatedly proven to be safe and was only removed from the Wipes

16  during the Class Period to avoid consumers' misperception that it was harmful.  (*Supra*

17  pp.4-5).[19]  Plaintiffs do not even assert that this issue can be proven with common

18  evidence (Pl. Br. 16), and in fact offer no such common proof. *See Perez v. State Farm*

19  *Mutual Auto. Ins. Co.*, 628 F. App'x 534, 535 (9th Cir. Jan. 11, 2016) (no commonality

20  in case alleging that defendants conspired to provide low quality equipment parts,

21  because "Plaintiffs provided no evidence at all on the 'crucial question' of parts

22

23  ─────────────

24  [19]  The sole basis for Plaintiffs' contention that the Challenged Wipes contain harmful
    ingredients is the presence of Phenoxyethanol, because their attorneys told them could
    cause nervous system damage, dehydration and vomiting in babies. (Brenner Tr. 40-41;
25  Banegas Tr. 31).  However, neither had any personal experience with these symptoms in
    their children.  (Banegas Tr. 32; Brenner Tr. 40-41).  Indeed, Banegas's claimed
26  concern with this ingredient is a sham; when she stopped using the Challenged Wipes,
    she switched to BJ's store brand wipes without bothering to check the ingredients list.
27  (Banegas Tr. 37-38; 84-86).  The BJ's wipes contain phenoxyethanol.  (Weinberger
    Decl. Exh. 18).

28

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG

quality.").   It is thus apparent that this theory is aimed entirely at creating a false narrative to malign P&G with nothing more than innuendo.

### C.   <u>Plaintiffs Cannot Certify a Multistate Class Under California Express Warranty Law</u>

Plaintiffs seek to apply California express warranty law to a "10 Jurisdiction Class" comprising nine states and the District of Columbia, but they have not even attempted to meet their "initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member. Such a showing is necessary to ensure that application of California law is constitutional." *Mazza*, 666 F.3d at 589–90 (citation omitted).   Instead, citing *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017), Plaintiffs assert that they need only show an "absence of conflict between laws"  (Pl. Br. 17).   But in that case, the burden shifted to defendants only after plaintiff demonstrated sufficient contacts with California by showing that conspiratorial activity related to price-fixing took place within the state. *Id.*   For this reason alone, the 10 Jurisdiction Class should not be certified.  *See Wheeler v. Estee Lauder Companies, Inc.*, 2013 WL 12121543, at *4 (C.D. Cal. Feb. 12, 2013) (Staton, J.) (declining to certify nationwide class where plaintiffs "do not put forth any evidence of California's contacts with the class members outside of California.").

### (1)   The Governmental Interest Test Requires the Application of the Law of Each Consumer's State of Purchase

Even if Plaintiffs had met this burden, California law cannot be applied to the 10 Jurisdiction Class because application of the governmental interest test in this case mandates that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.

Under the first step of the governmental interest test, district courts consider whether the applicable rule of law in each state materially differs from the law of California. *Id*. at 591-92.   Plaintiffs assert that the express warranty laws of all ten

jurisdictions are materially similar because none require reliance or privity, as each "permit[s] a presumption of reliance." (Pl. Br. at 17).  In fact, while Kansas, Virginia, West Virginia, and the District of Columbia do not require reliance, California, New Jersey, Delaware, Ohio, Missouri, and Utah *do* require reliance by the buyer on the warranty.  (Weinberger Decl. Exh. 19 (chart of applicable laws)).[20]  And while under certain circumstances California permits a classwide presumption of reliance if plaintiffs show that materially deceptive statements were received by the class (*Astiana*, 291 F.R.D. at 509), Delaware and New Jersey only presume each individual plaintiff's reliance, and shift the burden to defendant to prove each individual's non-reliance. (Weinberger Decl. Exh. 19.[21]  *See Mowbray v. Waste Mgmt. Holdings, Inc.,* 189 F.R.D. 194, 198 (D. Mass. 1999) (in state applying similar rebuttable presumption, "[w]hether as a matter of required proof by the plaintiff or rebuttal proof by the defendant, the individual issue of reliance would still need to be litigated."), *aff'd*, 208 F.3d 288 (1st Cir. 2000).

In sum, as one court put it, "[s]ome jurisdictions require a strict showing of reliance.  Other jurisdictions have no reliance requirement.  And still other jurisdictions have applied a rebuttable presumption of reliance.  But plaintiffs ignored these differences."  *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726–27 (5th Cir. 2007) (internal citations omitted).[22]  Here, the evidence shows that some class members

---

[20]  As discussed *supra* pp.16-18, Plaintiffs' evidence is insufficient to trigger a presumption of reliance under California law. Thus to the extent the Court determines that other states' laws do *not* materially conflict with California's, they are nevertheless inappropriate for class treatment for the same reasons discussed above.

[21]  New Jersey requires reliance and applies a distinct burden-shifting framework that Plaintiffs ignore.  (Weinberger Decl. Exh. 19); *see Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 2017 WL 3142119, at *14 (E.D. Pa. July 24, 2017) (denying class certification and holding that New Jersey law "require[s] reliance on the affirmations to perfect an express warranty, even though New Jersey only requires proof of reliance upon a showing by the defendant that the plaintiff did not believe the representations were true" and finding that "[i]nstead of offering class-wide proof of awareness or reliance, Plaintiffs argue incorrectly that neither of these elements is necessary.").

[22]  Similarly, Plaintiffs ignore the difference between states such as Ohio and Missouri that do not require privity under any circumstances (Weinberger Decl. Exh. 19), and

---

purchased the Challenged Wipes for reasons other than the Challenged Claims.  (*Supra* pp. 18-19).  Thus state specific distinctions as to reliance present outcome determinative conflicts and render the 10 Jurisdiction Class unmanageable at trial.  *Mazza,* 666 F.3d at 591 ("In cases where a plaintiff did not rely on an alleged misrepresentation, the reliance requirement will spell the difference between the success and failure of the claim.").[23]

The Court must next determine whether each state has an interest in having its own law applied.  As the Ninth Circuit has recognized, "[e]very state has an interest in having its law applied to its resident claimants" and "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory." *Mazza*, 666 F.3d at 591–92 9 (citation omitted).  Here, Plaintiffs' claims arise from the purchase of Wipes in foreign states, whose interest in applying their laws to putative class members' claims are squarely implicated.  *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 637 (N.D. Cal. 2015) (the "critical conduct" in express warranty claims occurs in state in which warranty was extended).

The Court must next decide "which state's interest would be more impaired if its policy were subordinated to the policy of the other state."  *Mazza*, 666 F.3d at 590.  "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'"  *Id.* at 593 (quoting

---

California, which requires privity unless a plaintiff makes a showing of reliance. *See Burr v. Sherwin Williams Co.,* 268 P.2d 1041, 1048–39 (Cal. 1954) (privity of contract required except where "purchaser of a product relied on representations made by the manufacturer in labels or advertising material.").

[23] Plaintiffs' reliance on *Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) is misplaced.  There, the court did not confront  issues of reliance or the legal standards relating to express warranty claims.  Moreover, there was no indication that consumers relied on anything other than defendants' efficacy claims on its homeopathic cold remedies which were "'". . . nothing more than placebos'" that conferred no medicinal benefit whatsoever.  *Id.* at *1 (citation omitted).  Here, by contrast, Plaintiffs do not claim that the Wipes were not effective at cleaning, and as discussed above, there are many reasons why potential class members may have purchased the wipes unrelated to Plaintiffs' interpretation of the Challenged Claim.

---

22

*Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980)). Here, the alleged wrong occurred in the jurisdiction in which each class member purchased the products. And "California's interest in applying its law to residents of foreign states is attenuated," particularly where, as here, the defendant is not a California citizen. *Mazza*, 666 F.3d at 594. Therefore, "the governing law for the express warranty claim will be based on where the purchaser of the . . . product resided." *Tasion*, 308 F.R.D. at 638.

### (2)   **Variations in State Law Defeat Predominance**

"[D]ifferences and nuances involving the laws governing the Plaintiffs' breach of express warranty claims prevent common questions of law and fact from predominating." *Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484, at *11 (E.D. Cal. Apr. 28, 2015). Plaintiffs ignore material differences in state laws, and offer nothing more to the Court than the bare assertion that no manageability concerns exist, falling woefully short of their burden to "creditably demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996) (quotation marks and citation omitted). Rather, predominance is defeated because such material "[d]ifferences in state law, . . . compound" "the disparate questions undermining class cohesion in this case." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). *See Tasion*, 308 F.R.D. at 638 (differences in state express warranty laws create "predominance/ manageability problem that preclude certification of a Rule 23(b)(3) class").

### D.   **The Putative Classes are Not Manageable**

"Trial courts must pay careful attention to manageability when deciding whether to certify a class action. . . . [T]he manageability of individual issues is just as important as the existence of common questions uniting the proposed class." *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 29 (Cal. 2014). Although there is no "freestanding administrative feasibility requirement" in this Circuit, district courts must "consider 'the

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

1   likely difficulties in managing a class action'" before certifying a class under Rule

2   23(b)(3). *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) (citation

3   omitted).

4       Plaintiffs have proposed no method to reliably identify class members, which is

5   important because during the class period Softcare Unscented and the Challenged Wipes

6   overlapped on store shelves and phenoxyethanol was removed from the Challenged

7   Wipes. (*Supra* pp. 2, 4-5). By completely ignoring these concerns and glossing over

8   material differences that will render trial of the 10 Jurisdiction Class unmanageable,

9   Plaintiffs have failed to meet their burden. *See Jones*, 2014 WL 2702726, at *24

10  (plaintiffs failed to prove manageability where they "have not proposed an adequate

11  means of identify each class member" even though challenged claim was removed from

12  product during class period).[24]

13  **IV.   PLAINTIFFS CANNOT CERTIFY A RULE 23(b)(2) CLASS**

14      Nowhere in Plaintiffs' motion do they even assert – much less prove – that "the

15  primary relief sought" in this action "is declaratory or injunctive." *Ellis v. Costco*

16  *Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011). Monetary relief is necessarily the

17  primary concern of these Plaintiffs, who have no intention of purchasing the Challenged

18  Wipes again (Banegas Tr. 62; Brenner Tr. 96), and whose claim for injunctive relief is

19  based entirely on their speculation that P&G may in the future decide to reformulate

20  them to somehow comport with their definition of a "natural" wipe. (Pl. Br. 23;

21  Benegas Tr. 92 (hopes Court instructs P&G to "make[ ] this product a natural

22  product")).

23      Indeed, Plaintiffs' intention to purchase a reformulated product is inconsistent

24

---

25  [24] *Jones* reached this conclusion after engaging in a balancing test in accord with
    *Briseno*. 844 F.3d at 1128 (to assess manageability, courts must "balance the benefits of
26  class adjudication against its costs"). *See also Hodes v. Van Int'l Foods, et al.*, 2009
    U.S. Dist. LEXIS 72193, at *12 (C.D. Cal. July 23, 2009) ("The Court will not engage
27  in its own investigation" as to whether the particular products purchased by class
    members "contained nutritional inaccuracies.").

28

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   8:16-cv-1093-JLS-JCG

with any injunctive relief that has been sought or could issue in this case, as Plaintiffs do not seek nor would they obtain an order requiring P&G to modify its manufacturing process to remove any ingredient that Plaintiffs deem unnatural. Plaintiffs seek to enjoin P&G from "market[ing] and sell[ing] the Wipes with the 'Natural Clean' representation" (Pl. Br. 23), but neither named Plaintiff has shown that she would purchase the Wipes even if P&G were ordered to do so. *See In re First American Home Buyers Protection Corp. Class Action Litig.*, 313 F.R.D. 578, 611 (S.D. Cal. 2016) (declining to certify putative (b)(2) class where "primary relief sought in this case is monetary"); *Dukes,* 131 S. Ct. at 2557 (Rule 23(b)(2)"does not authorize class certification where each class member would be entitled to an individualized award of monetary damages.").[25]

## V.  **CONCLUSION**

P&G respectfully requests that Plaintiffs' motion be denied in its entirety.

DATED:  October 27, 2017          Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/Harold P. Weinberger
   Harold P. Weinberger (*admitted pro hac vice*)
   Norman C. Simon (*admitted pro hac vice*)
   Eileen M. Patt (*admitted pro hac vice*)
   1177 Avenue of the Americas
   New York, New York  10036
   (212) 715-9100
   hweinberger@kramerlevin.com
   nsimon@kramerlevin.com
   epatt@kramerlevin.com

---

[25] *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014) ("Certification is improper where, as here, the request for injunctive and/or declaratory relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages."); *Schellenbach v. GoDaddy.com, LLC*, 2017 WL 2902683, at *12 (D. Ariz. July 7, 2017) ("where Plaintiffs and the class have purchased their [challenged products] and seek to recover monetary damages because they allegedly paid too much, there can be no doubt that the appropriate final relief relates exclusively or predominantly to money damages.").

P&G'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  8:16-cv-1093-JLS-JCG